IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER D. AUBRECHT**, | ) |
| Plaintiff, | ) |
| vs. | ) 2:06cv1053 |
| | ) **Electronic Filing** |
| **PENNSYLVANIA STATE POLICE**; **JEFFREY B. MILLER**; **JOHN R. BROWN**; **RALPH M. PERIANDI**; **RODNEY PATTERSON**; **JAMES J. GAROFOLO**; **JAMES MCFADDEN**; **MARCENIA ROBINSON**; **STACY SCHMITT**; **BRYAN L. KEY**; **ANTHONY DELUCA**; **MICHELLE FREE** and **PENNSYLVANIA STATE TROOPER ASSOCIATION**, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

March 23, 2009

**I.     INTRODUCTION**

Plaintiff, Christopher D. Aubrecht ("Aubrecht" or "Plaintiff"), initiated this action against Defendants, Pennsylvania State Police ("PSP"), Colonel Jeffrey B. Miller ("Miller"), Lt. Colonel John R. Brown ("Brown"), Lt. Colonel Ralph M. Periandi ("Periandi"), Captain Rodney Patterson ("Patterson"), Captain James J. Garofolo ("Garafolo"), Lt. James McFadden ("McFadden"), Lt. Marcenia Robinson ("Robinson"), Lt. Stacy Schmitt ("Schmitt"), Sgt. Bryan L. Key ("Key"), Sgt. Anthony DeLuca ("DeLuca"), Cpl. Michelle Free[1] ("Free")(collectively the "Commonwealth Defendants") and the Pennsylvania State Trooper Association (the "Association") by filing a seven (7) count complaint with this Court on August 7, 2006.  In his complaint, Aubrecht alleges the following: (a) a claim under  42 U.S.C. § 1983, for violation of his rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States; (b) injunctive relief for such alleged violations; (c) violation of Pennsylvania's

---

[1]     The individual Commonwealth Defendants have been sued in both their individual and official capacities.

Whistleblower Law, 43 PA. STAT. § 1421 *et seq.*; (d) Defamation; (e) Invasion of Privacy; (f) Failure to Represent; and (g) Civil Conspiracy. Defendants have filed motions for summary judgment, Plaintiff has responded and the matters are now before the Court.

As per Local Rule 56.1(B)(1), both the Commonwealth Defendants and the Association filed Concise Statements of Undisputed Material Facts. Plaintiff, however, failed to file a response to the statements, therefore, pursuant to Local Rule 56.1(C) and (E), the facts set forth in the statements of both the Commonwealth Defendants and the Association are deemed admitted for the purposes of deciding the motions for summary judgment. Further, in his brief in opposition to the motions for summary judgment, Plaintiff has failed to support any of the facts alleged therein with citations to the record. The Court will not consider any alleged fact not supported by a citation to the record.

For the reasons set forth below, the Court will grant summary judgment for the Commonwealth Defendants and the Association on Aubrecht's claims under §1983, any state claim subject to Eleventh Amendment or sovereign immunity, as well as any state claim deemed abandoned, and the Court will refuse to exercise supplemental jurisdiction over any remaining pendent state claims.

## II.   STATEMENT OF THE CASE

Aubrecht is a Pennsylvania State trooper and has been employed by the PSP since 1994. Commonwealth Def. Statement of Undisputed Material Facts ¶ 1 (hereinafter "Com. SUMF"); Association Statement of Undisputed Material Facts ¶ 6 (hereinafter "Assoc. SUMF"). Aubrecht is currently assigned to Troop T, which covers the Pennsylvania Turnpike system, at the New Stanton Station. Com. SUMF ¶¶ 2 & 3; Assoc. SUMF ¶ 6.

The job of a turnpike trooper is primarily traffic enforcement, which makes it difficult to evaluate a traffic trooper's performance. Com. SUMF ¶ 4. In evaluating a trooper's relative performance, one thing a supervisor will look at is a comparison of a trooper's numbers in

categories such as citations, written warnings, and assists to motorists, to the "station average"[2] in those categories. Com. SUMF ¶ 8. If a trooper's numbers continually fall below the station average, a trooper may be assigned a supervisor to ride with the trooper, a "ride-along". Com. SUMF ¶¶ 15 & 16. During a ride-along, a supervisor will observe the quality of the trooper's work, and how he performs his duties. Com. SUMF ¶ 36. It is undisputed that Aubrecht was subject to numerous supervisory ride-alongs.

On or about January 17, 2002, Aubrecht submitted a letter to Sgt. Key complaining about the frequent supervisory ride-alongs he received and asking for a reason why he was selected[3]. Assoc. SUMF ¶ 10. Key forwarded the letter to Lt. Schmitt and Schmitt met with Aubrecht regarding his complaint in January or February of 2002. *Id.* Aubrecht contends that Schmitt said he ordered the ride-alongs because Aubrecht wrote too many warnings and not enough citations. *Id.*; Com. SUMF ¶ 39. Aubrecht contends he explained why his numbers were the way they were, and Schmitt stopped the ride-alongs[4]. Com. SUMF ¶ 39.

Aubrecht contends that in June of 2004, Sgt. Key told him that if he wanted to get his weekends off and attend classes, he needed to write twenty (20) citations per month. Com. SUMF ¶ 19. On August 15, 2004, Aubrecht sent a memo to Key in which he complained of being subject to supervisory ride-alongs ordered solely based upon his citation numbers. Com. SUMF ¶ 20; Com. SUMF Ex. K. Aubrecht also voiced several concerns regarding the "quota" and his specific style of enforcement. Com. SUMF Ex. K. Key responded by e-mail on August

---

[2] The station average for a particular category is not a fixed number but is a mathematical calculation. For example, the station average for citations is simply the total number of citations written by all the troopers assigned to the station, divided by the number of troopers. Com. SUMF ¶¶ 9 & 10.

[3] Aubrecht admitted that at the time he wrote the letter it was his belief that the ride-alongs were a result of not writing enough citations. Assoc. SUMF ¶ 11.

[4] That is the extent of Schmitt's involvement in this case, and he retired in 2002. Com. SUMF ¶ 40.

3

16, 2004, contending Aubrecht misunderstood; Key never mentioned a quota, nor was Aubrecht "directed . . . to write 20 citations per month . . ." Com. SUMF ¶ 21; Com. SUMF Ex. L. Aubrecht admits, however, that no one in authority ever told him there was a quota, he was told that, compared to the station average, his numbers were low. Com. SUMF ¶ 18. Further, Aubrecht admits that at the time he was allegedly told to write twenty (20) citations per month, the station average was approximately thirty (30) citations. Com. SUMF ¶ 22.

Aubrecht asserts that he was subject to adverse employment actions because he failed to meet the alleged citation quota, and that the adverse treatment increased subsequent to June 2004. Assoc. SUMF ¶ 21. The adverse employment actions of which he complains include ride-alongs, denial of transfer requests, denial of overtime opportunities, denial of promotional opportunities, remedial training, poor performance evaluations, denial of training and certain shift selections. *See generally* Com. SUMF and Assoc. SUMF. Based on these perceived slights, Aubrecht filed this cause of action against what appears to be every superior officer he came into contact with since 2002.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in

favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994). Moreover, the non-moving party cannot defeat a well supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

**IV.    DISCUSSION**

The Commonwealth Defendants and the Association have set forth several meritorious arguments in support of their motions. The Commonwealth Defendants argue, *inter alia*, that the Eleventh Amendment bars suit against the Commonwealth, that several defendants are not "persons" subject to suit under 42 U.S.C. § 1983, and that the complaint lacks allegations of any personal involvement of several individually-named defendants, to the extent that they were sued in their individual capacities. Clearly, the suit against the Commonwealth is barred by the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 340-341 (1979). Moreover, to the extent

the individuals were sued in their official capacity, the action is simply one against the Commonwealth. See *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, because the immunities available to a defendant in an official-capacity action are those that the governmental entity possesses, Aubrecht's § 1983 claim is barred against the "official-capacity" defendants as well. *Graham*, 473 U.S. at 167. The Association also argues that many of Aubrecht's claims under § 1983 are barred by the relevant two year statute of limitations. Because the Court finds Aubrecht has substantively failed to prove the elements of his claims under § 1983, the Court will not address the many arguments made, and will instead take the path of least resistance and discuss Aubrecht's § 1983 contentions against the Association and the individual defendants sued in there individual capacities.

 1. Section 1983 First Amendment Retaliation Claims

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . .

42 U.S.C. § 1983. While § 1983 is not itself a source of substantive rights, *Baker v. McCollan*, 443 U.S. 137 144 n.3 (1979), the section provides a remedy for violations of constitutional rights where the alleged violation was committed by a person acting under the color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

To establish a *prima facie* case under § 1983, a plaintiff must show that the action occurred "under color of state law" and that the action deprived the plaintiff of a constitutional right or a federal statutory right. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *Kost v. Kozakiewicz*, 1 F.3d 176,

184 (3d Cir. 1993). There is no dispute that the individual PSP defendants, who are various officers and or former officers of the PSP, were acting under color of state law. Aubrecht must show, however, that the Association was acting under color of state law.

In order for an actor to be acting under color of state law, his act must entail "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941); *Barna v. City of Perth Amboy*, 42 F.3d 809, 815-16 (3d Cir. 1994). Under color of law means under "pretense" of law, and therefore, "acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion); *See Barna v. City of Perth Amboy*, 42 F.3d at 815-816. However, even "acts committed by a police officer . . . while on duty and in uniform are not under color of state law unless they are in some way 'related to the performance of police duties.'" *Briscoe v. LaHue*, 663 F.2d 713, 721 n.4. (7th Cir. 1981) (quoting *Johnson v. Hackett*, 284 F. Supp. 933, 937 (E.D. Pa. 1968)), *aff'd*, 460 U.S. 325 (1983). As the Court of Appeals for the Second Circuit has explained, if a person's actions were not "committed in the performance of any actual or pretended duty," the actions were not committed under color of law. *Bonsignore v. City of New York*, 683 F.2d 635, 639 (2d Cir. 1982) (quoting *Johnson v. Hackett*, 284 F. Supp. at 937). *See generally*, *Barna v. City of Perth Amboy*, 42 F.3d at 815-817.

The Association is the labor organization representing the bargaining unit of Pennsylvania State Police Officers pursuant to Pennsylvania labor laws. Assoc. SUMF ¶ 4. The Association is a collective bargaining agent for the unit, it is neither a state agency nor state funded. *Id.* It is a private party. *Id.* Although it is possible for a private party to violate an individual's § 1983 rights, the individual alleging such a violation is not relieved of the obligation to establish that the private party acted under color of state law. *See Kost v. Kozakiewicz*, 1 F.3d at 184. "The inquiry must be whether there is a sufficiently close nexus between the State and the challenged action [of the private party] so that the action of the latter

7

may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

Aubrecht's § 1983 claim against the Association cannot withstand summary judgment because Aubrecht has failed to make a showing sufficient to establish the existence of the element of state action, the first element essential to his case[5]. Aubrecht fails to direct the Court to any record evidence that the Association reached an understanding with at least one of the individual Commonwealth Defendants to deny Aubrecht his civil rights. *See Kost v. Kozakiewicz*, 1 F.3d at 185. "Establishing the existence of this 'understanding,' . . . is really nothing more than another way to show state action as required by § 1983 when a private party is alleged to have violated that statute." *Id.* Aubrecht has failed to establish the nexus necessary to show that the Association acted under color of state law with regard to his alleged civil rights deprivation. Such complete failure of proof on an essential element of Aubrecht's § 1983 claim entitles the Association to summary judgment as a matter of law[6]. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

The next question the Court must examine is whether Aubrecht has alleged a deprivation of a constitutional or federal right[7]. *See Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

### A. First Amendment Retaliation

Aubrecht has alleged a claim against the individual Commonwealth Defendants,

---

[5] Aubrecht has failed to make any argument that the Association has in fact acted in concert with the Commonwealth Defendants.

[6] Plaintiff also alleges a claim of Civil Conspiracy. Though the Court believes such claim is based upon state law, Aubrecht's failure to establish that the Association reached an understanding with at least one of the individual Commonwealth Defendants to deny Aubrecht his civil rights, is fatal to any federal civil conspiracy claim Aubrecht may have alleged.

[7] Any claim under § 1983 that Plaintiff perceives as arising under the alleged violation of 71 PA. STAT. § 2001, regarding the illegality of quota requirements, fails because the statute does not create a federal statutory right.

8

pursuant to 42 U.S.C. § 1983, for retaliating against him for exercising his rights to free expression under the First Amendment. The Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected rights,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). In general, to state a constitutional retaliation claim, a plaintiff must prove: (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). Whether the activity is protected is a question of law, while the remaining inquiries are questions of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). In this instance Aubrecht fails to establish a *prima facie* First Amendment retaliation claim against the individual Commonwealth Defendants.

When the speaker in question is a public employee, that speech "is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006)(quoting *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006)).

Because Aubrecht's § 1983 retaliation claim arises under the free speech clause, The Court must utilize the framework established by the Supreme Court in *Connick v. Myers*, 461 U.S. 138 (1983), for evaluating such claim. In *Connick*, the Supreme Curt stated "when an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a

9

public agency allegedly in reaction to the employee's behavior." *Id.* at 147; *See also Garcetti v. Cebalos*, 547 U.S. 410, 418 (2006)(Public employees do not speak "as citizens" when they make statements "pursuant to their official duties.").

Nowhere in the record does Aubrecht specify the specific speech which prompted the alleged retaliatory conduct of Defendants. Based on the record, however, the alleged free speech must fall within the following two categories:

1. Aubrecht's complaints, formal and informal, to certain supervisory personnel in the PSP regarding his perception that Key was subjecting him to an improper quota and was utilizing improper methods, *e.g.* ride-alongs, negative reviews, denial of overtime and purposeful scheduling conflicts, to ensure compliance with the quota; or

2. Aubrecht's submission of two (2) "Use of Force or Complaint Reception and Processing Worksheets" to the Internal Affairs Division of the PSP wherein he complained that Key subjected him to an improper quota, and recounting ways in which he was affected by the alleged improper supervision.

In either instance, Aubrecht is not speaking as a citizen, but is speaking on matters that are matters of a personal interest or are statements pursuant to his official duties. The Court finds that in all aspects herein, Aubrecht speaks not as a citizen upon matters of public concern[8], but instead as an employee upon matters only of a personal interest. As such, his speech is not entitled to the protection of the First Amendment, and his claim must be dismissed.

B. Fifth Amendment Due Process

Aubrecht contends that the Commonwealth Defendants violated his rights under the Fifth Amendment. The Fifth Amendment provides: "No person shall… be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The due process clause of the Fifth Amendment, however, is limited to acts of the federal government and has no application to the conduct of the states, their agencies, subdivisions, or employees. *See Bartkus v. Illinois*, 359 U.S. 121, 124 (1950); *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237-238 (M.D. Pa. 1995); *Shepherdson v. Nigro*, 5 F. Supp. 2d 305, n.2 (E.D. Pa. 1998); *see also Ferguson v.*

---

[8] Aubrecht does not even address this issue in his brief.

*Pennsylvania*, 2009 U.S. Dist. LEXIS 20099, 14-15 (W.D. Pa. Mar. 12, 2009). Aubrecht's claim under the Fifth Amendment, therefore, fails as a matter of law and shall be dismissed.

C. Fourteenth Amendment Equal Protection

Aubrecht's claim based upon the Equal Protection Clause of the Fourteenth Amendment fails as well. The essence of an equal protection claim is disparate treatment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Shoemaker v. City of Lock Haven*, 906 F. Supp. at 238 (citations omitted). There is nothing in this record to suggest that Aubrecht is a member of any minority or class which has historically been the object of discrimination.

Moreover, other Federal Courts have held, in similar situations, that alleged equal protection violations must be dismissed. *See, e.g.*, *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)(fact that plaintiff was singled out for investigation and discipline by government employer because of his union membership did not state equal protection claim); *Charles v. Baesler*, 910 F.2d 1349, 1356-135757 (6th Cir. 1990)(failure to promote fire captain did not violate his equal protection rights where plaintiff failed to show that government employer or his supervisors administered contractual promotion system with a discriminatory intent or purpose--Plaintiff's "equal protection claim boils down to the assertion that he was treated one way and everyone else another, which has never been thought to raise an equal protection claim . . . [Plaintiff]…may be correct in arguing that the government and its officials in fact singled him out due to their sloppy administration of the contractual promotion system and their misapplication of state and local law. Such negligence is a far cry, however, from intentional invidious discrimination.").

Any assertion by Plaintiff regarding the existence of an equal protection violation under the class-of-one theory as announced in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), also fails. In *Olech*, the Court determined that a successful equal protection claim may be

brought by a class-of-one, where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. at 564. *Olech*, however, has since been limited by *Engquist v. Oregon Dep't of Agriculture*, 128 S. Ct. 2146 (2008), which held that the class-of-one theory of equal protection is not applicable in the public employment context.

> In concluding that the class-of-one theory of equal protection has no application in the public employment context -- and that is all we decide -- we are guided, as in the past, by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.' If . . . plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action -- not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments -- on the theory that other employees were not treated wrongfully.

*Engquist*, 128 S.Ct. 2146, 2156, 170 L. Ed. 2d 975 (citations omitted).

In *Skrutski v. Marut*, 288 Fed. App'x 803 (3d Cir. 2008), the Court of Appeals for the Third Circuit held that a class-of-one theory against four members of the PSP was a legal avenue which was "clearly foreclosed by the Supreme Court's recent decision that such claims are not cognizable in the public employment context." *Skrutski v. Marut*, 288 Fed. App'x at 809. Further, the Supreme Court explained that the class of one theory of equal protection is inapplicable to the public employment context because "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. . . [T]he public employer often must take into account the individual personalities and interpersonal relationships of employees in the workplace." *Engquist*, 128 S. Ct. at 2154. This Court is not the appropriate forum in which to review the multitude of personnel decisions that the PSP must make on a daily basis. Aubrecht's equal protection claim must be dismissed.

D.  Fourteenth Amendment Due Process

The Due Process Clause of the Fourteenth Amendment, by its clear terms, prohibits a State from depriving a person of "life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. Though Aubrecht makes no such argument in his brief, he asserts in his complaint that he was deprived of property without due process of law. Complaint ¶¶ 40, 47. As the Supreme Court stated, "the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 570 (1972). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Id.* at 569. To state a claim under § 1983 for deprivation of procedural due process rights, Aubrecht must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Plaintiff fails to satisfy the first element; this claim also must be dismissed.

None of the adverse employment actions that Aubrecht allegedly suffered rise to a level of either a property or liberty interest. Property interests are not created by the Constitution. Instead, they are created by an independent source such as state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985). Aubrecht makes no argument counter to that of the Commonwealth Defendants that Aubrecht failed to set forth a procedural due process claim. It is clear to this Court that Aubrecht has utterly failed to show that he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection.

It has long been settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law[9] as well as to matters of procedure. *Whitney v. California*, 274 U.S.

---

[9]  Though it appears that Aubrecht may be attempting to allege a substantive due process claim, he makes no argument in support of a substantive due process claim in his brief. The Court will briefly address the substantive due process issue.

357, 373 (1927). The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000). A property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive," *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000). Nor may the state take away such interest by means of government conduct so egregious that it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

To prevail on a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d at 123. Not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. *See Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989). To state a substantive due process claim, the deprivation must be of "a particular quality of property interest." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995). Whether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution. *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring); *Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 n.12 (3d Cir. 1997).

Aubrecht is unable to direct this Court to any fundamental right of which he was deprived. Notwithstanding the fact that Aubrecht is still employed by the PSP, his interest in continued employment with a governmental employer is not so fundamental as to be protected by substantive due process. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142 (3d Cir. Pa. 2000). Moreover, any incidental benefits arising out of Aubrecht's public employment obviously

fails to rise to the level of an interest that is fundamental under the United States Constitution. Summary judgment shall be entered in favor of the Defendants and against Aubrecht on any perceived claim pursuant to § 1983 for violation of the Due Process Clause of the Fourteenth Amendment.

    2.    <u>Aubrecht's Claim Under Pennsylvania's Whistleblower Law</u>

At Count III of his complaint, Aubrecht alleges a claim against the Commonwealth Defendants for violation of Pennsylvania's Whistleblower Law, 43 PA. STAT. § 1421 *et seq*. The Eleventh Amendment to the Constitution bars this claim against the PSP and the individual Commonwealth Defendants, to the extent they are being sued in their official capacities. *Quern v. Jordan*, 440 U.S. 332, 340-341 (1979). To the extent such claim is made against the Commonwealth Defendants in their individual capacities, the Court will decline to exercise supplemental jurisdiction over this pendent state claim.

    3.    <u>Aubrecht's State Tort Claims</u>

Aubrecht's state tort claims, including Defamation, Invasion of Privacy, and Civil Conspiracy, set forth against the Commonwealth Defendants are barred by the doctrine of sovereign immunity. The doctrine of sovereign immunity bars damage claims for state law torts against the Commonwealth, Commonwealth agencies, and employees of the Commonwealth agencies who are acting within the scope of their duties, except for certain narrow exceptions that are not applicable in this case. *See McGrath v. Johnson*, 67 F. Supp. 2d 499, 511 (E. D. Pa. 1999). Sovereign immunity also applies to Commonwealth employees sued in their individual capacities, including suits alleging intentional torts. *Id.*

Aubrecht has also alleged a claim against the PSP and the Association based upon a "failure to represent" by the Association. Plaintiff's Brief in opposition fails to address this issue, and the Court is left to assume that he has abandoned this claim. We will therefore grant the motion for summary judgment on this claim as well.

## V. CONCLUSION

Based on the foregoing, the Court will grant summary judgment for the Commonwealth Defendants and the Association, and to the extent there are any pendent state claims remaining, the Court declines to exercise its supplement jurisdiction over such matters. An appropriate Order follows.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Monte J. Rabner, Esquire
    429 Fourth Avenue
    800 Law & Finance Building
    Pittsburgh, PA 15219

    Eric C. Stoltenberg, Esquire
    Lightman & Welby
    220 Grant Street, 6th Floor
    Pittsburgh, PA 15219

    Kemal Alexander Mericli, Esquire
    Douglas B. Barbour, Esquire
    Office of Attorney General
    6th Floor, Manor Complex
    564 Forbes Avenue
    Pittsburgh, PA 15219